Case No. 17-1065 at Alp, T-Mobile USA, Inc. Petitioner v. National Labor Relations Board Mr. Theodore for the petitioner, Ms. Nisbell for the respondent Petitioner v. National Labor Relations Board Mark Theodore, Our position was simply that we wanted to, whatever happened, it had to be final. Counsel, suppose, this is just a hypothetical, just not a hypothetical, but suppose I think looking at the board's own decisions, that its interpretation of those decisions is making a policy decision that employers in this circumstance have two options, and two options only, and that the other cases you cite are distinguishable as the board says they are, because they're unusual circumstances that don't exist here. Does that preclude you from succeeding, or do you have an argument that you can prevail here even if I view the cases that way? Well, that's a good hypothetical, and I believe we fit in a rare category. And tell me why that is. And this is because nothing anybody can point to except the suspension, which is a purely legal issue, is that we acted in bad faith or otherwise violated the law. Most cases, as you probably have seen, involve many different kinds of allegations that, by the way, involve actual employees. There was no indication here that any employee even was aware of what was happening in this case. Okay. All right, why don't we hear from the board? We'll give you some time on rebuttal. Good morning. Good morning. May it please the Court. Kelly Isbell here on behalf of the National Labor Relations Board. Under Levitz and cases since the 1980s, employers have two choices. When they receive evidence that a union has lost its majority status, they can withdraw recognition or they can continue to bargain. Levitz is very clear. Even if you have evidence of a loss of majority support, you must continue bargaining if you go the route of the decertification election or the management election. Despite the fact that that is board case law, that does not immunize it against an arbitrary and capricious challenge, does it? The fact that you've done it before doesn't make it non-arbitrary and capricious, does it? No, Your Honor, it does not. Except that in this case, as you know, it is the board's responsibility to set policy. The board followed Levitz, followed these older cases, Dresser Industries and RCA. But this is not like a notice and comment rule. This is something that when you work where the board does on case law, there's an inherently case-by-case aspect to it that doesn't seem to me to protect it against arbitrary and capricious challenge in a later case. Does it? Well, I think if you're talking about how this rule will work out in later cases, I think... Like this one, for example. I'm sorry? Like this case, for example. It looked to me like you were the center below and your ALJ both saw a great deal of merit in the third way, the lesser path chosen by the employer here. And is pressing it alone a good enough reason to reject that without explaining why, that isn't a good way to do it? I can't find any case except for these pretty rare examples that are factually distinguishable where the board or court has allowed an employer to pick and choose what issues it will bargain about going forward to rival unions or a decertification election. In that election process, the issue is the election and having a fair and balanced... Why don't you have the election? The board has had a petition before for, what, three years now? Why don't they have the election and put all this behind them? The charges were blocked. The board's blocking charge policy is long-standing going back as far as I can tell to 1937. That doesn't make it right. I asked you for a why on that, not whether you've done it before. Because under the board's blocking charge... We had the same argument for IRS on the cases involving the discrimination by the IRS against certain groups. They said, well, we've always held up our rulings on tax-free status for all these years. It's been litigation. We said that didn't make any sense. I don't know why it does here. If the board, in fact, is carrying out a policy of labor democracy, which is what our labor ancestors fought for, why don't they let the union members go ahead and vote? There are two kinds of blocking charges. The first kind is the kind of charge that might interfere with an election. And even though the company has argued in its brief that these charges were frivolous, this is not an argument they made to the board. Once the regional director blocks those charges, and remember, it's the regional director's discretionary decision, he can block them. He found there to be enough evidence to go forward with a complaint on those charges. And there's no reason that I can see why you couldn't simultaneously go forward with the vote. Well, that is a direct challenge to the board's blocking charge rule. And once the regional director issues... I understand that. But I do not see the reason behind it. It's a direct challenge. I'm directly challenging you to tell me why you don't let the workers vote whether they want to be represented by this union or not. Because the regional director has determined that those charges might interfere with the election. He decided to block the election. That decision by the regional director could have been challenged. There could have been a request for review filed. It was not filed. And I do not believe that issue is before the court, Your Honor. Okay. But whether you win or lose this case is before the court. So you may wish to deal with the questions. But you've had your say, and I will let you go forward. Well, I'm enjoying talking to you, so please continue to ask questions and don't think I'm... I'm approved on that. So under Levitz and Dresser Industries, there are two choices. And the board, in its... I'm sorry, Your Honor. I just want to clarify a little bit. You say the regional director decided the charges might affect any election. Was there such an explicit finding? No. Under the board's case handling manual, there are two types of blocking charges. The kind of blocking charge that might have an effect on employee free choice in an election, and then the kind of blocking charge you referred to as taint, where it might actually taint the petition, and the petition might eventually be dismissed. Those kinds of charges are supervisors are collecting signatures on the decertification petition. And there was never any discussion in this case of there being any kind of taint, and the regional director certainly never dismissed the petition. So it's a Type 1. And Type 1 is... Type 1 is the lesser kind. It might interfere with the election. So once... Well, no. Let me just be clear in my mind how you're... I think of taint as interfering with the election. It's worse. It might lead to the petition actually being dismissed. Ah. And then the other one is what? Conduct that might interfere with the election but would not lead to the petition actually being dismissed. Once that conduct is remedied, the petition stays live. So does the regional director have the authority under whatever guidelines or internal regulations to determine this is neither 1 nor 2? Yes, Your Honor. There are exceptions. He doesn't always have to block. There are exceptions. And, of course, it could have been... A request for review could have been filed with the board so that the board could review it. Could... Was there any way T-Mobile could have... could have continued with its current policy that is not withdrawing recognition but said, look, why don't we just put off negotiations until we see who wins the election? Could they have done that? Well, I think under the board's decision, no. I mean, of course, if the union agreed and no charge was filed, then it wouldn't... I mean, they could have said to the union, right, look, let's just wait. And if the union agreed, that would be okay. Right, because the board... Right? Yes. But if the union insisted on negotiating, it would have to negotiate, right? Yes. I mean, you know, if the charge is filed, then it would come to us. No. No, I'm saying they could have said to the union, look, we're not going to withdraw recognition, but why don't we just put things off until we see who wins the election, right? They could have done that, and the union could have agreed, and there wouldn't have been a problem, right? Right. There wouldn't have been a problem because it never would have come to the board. Correct. Yes. Now, if the union said no, we don't want to do that, then the employer wouldn't face a ULP, unfair labor practice charge, if it then said, okay, we'll negotiate, right? Correct. And so during this period of time, I take it if the union believed that the employer was not acting, bargaining in good faith, it could file a ULP, even if the board's reason for sort of drawing out the negotiations was its concern that maybe the union didn't enjoy majority support, right? That the employer could have filed the... Yeah. No, the union. Right. Yes. Okay. So here... Can you just tell us once again... Okay, so I understand the board's policy. I read it. Its reason for this policy is that as long as the employer recognizes the union, it needs to participate in all of its collective bargaining obligations, right? Yes, Your Honor. Okay. The end? No, I didn't have anything else. Okay. Sorry. Anything further? Well, what I wanted to point out is that the issue here is whether or not the board's decision applying levits in this particular situation is reasonable. And what the board did here was set out a rule that's pretty easy to follow. What T-Mobile's rule, which in its view, of course, is also reasonable, what I think lead to is more uncertainty for employers and unions than the board has to decide in every single case. If an employer says, we will bargain over non-economic issues but not economic issues, is that under the new T-Mobile rule an unfair labor practice or not? So that has to go to the board. How long is the hiatus between bargaining? Is it six months? Is it a year? All of those questions come to the board. Here, following more than 30 years' worth of law, once you decide to go to an election and the election under the board's rules must be free and fair, then you continue your bargaining obligations. What's your response to counsel's answer to my question when I asked him whether or not, assume I think the board has properly stated its rule here, namely, that you just have two options but there are some exceptions, which you acknowledge, right? Yes, Your Honor. His argument was, well, this is an exception. This is an exceptional case. What was your response to that answer? My response is that the board didn't find it to be exceptional. I mean, the board found this to be a case where its traditional levitz rule could apply. You just keep bargaining. And if they had kept bargaining, those charges were dismissed, the election would have happened. Right now, it's being blocked because of this refusal to bargain. The issue is going to the election and by refusing to bargain, then you're signaling to the employees that the union is ineffective. So your taint's not the right word because that's a legal term, but you're affecting how the employees view the union before the election. And that's what the board found to be improper. Show Industries, of course, is completely different. You can close your plant for any reason and there's nothing to bargain about. So the option the employer had, you said, was to appeal the regional director's what I'll call blocking decision to the board. Is that right? To continue to raise the issue of whether or not that blocking charge was proper or the blocking letter was proper. That's what I'm trying to understand. The employer says, I'm ready to participate in a special election. The regional director says there are these three ULPs. We can't have an election. Then what happens procedurally? Procedurally, once the regional director decides... He just did. Right. Then what? What is my option as the employer? You could settle the charges with the... Oh, I know. Okay, we're going to assume there's no settlement. Then it plays out like it did here. There's a here on the Board of Administrative Logic. So there is no appeal of the regional director's decision as such on the blocking aspect. When the regional director sends... It's a letter. We call it a blocking letter. When he sends out that blocking letter, that can be appealed to the board. So then I go to the board and I say, I want an election. Then what happens? The board may grant review and it may deny review. I know. Take me forward, counsel, just so I understand this process. In other words, is the board going to decide the ULPs at that point? If the... I'm trying to run a business. Right. All right? I've got 13 employees who told me they don't follow the union. All right? From my point of view, it doesn't make much sense for me to bargain with this union about a new collective bargaining agreement. But the regional director has said, even though the board favors these special elections, we can't have one because of these ULPs. So the question is, how do I get either rid of these ULPs or get them decided on the merits so we can have this special election? As I understood it, eight and a half months passed. Yes, Your Honor. So I'm going to analogize to the normal representation case context. If they filed a request for review, the evidence before the regional director, the board grants the request for review. The board says, we will review it. The evidence before the regional director then goes to the board, and a board attorney reviews it, and the board would issue a decision. So the board is going to make a de novo ruling on the ULPs before the regional director has made a decision? I think the board would not find whether or not those ULPs occurred. The board would look at whether or not those ULPs should block the election. You mean whether they're in the class of ULPs that brought the election? Right. This does not happen very – I'm sorry, Your Honor. This happens very rarely, and when I look to find requests for review, I couldn't find one immediately where the board had granted review. So I'm not sure how the board would look at it, but it would not be doing an administrative law judge's job of figuring out whether the action happened that would impact the election. It would be looking at whether or not the blocking letter should have gone out. Where did I read that we look somewhat skeptically at employers who are looking out for employee rights with their union? Osceola Ironworks, Your Honor. So that's how the board comes down here, that the employer has to say, I'm not going to recognize the union anymore because I have what I consider to be firm evidence that the union no longer enjoys majority support, and then each employee who wants to use a company car has to negotiate independently with the supervisor, for example? For example. Yes, Your Honor. All right. If there are no further questions. Thank you. Thank you. Just briefly, a couple things that came up in the argument. To my knowledge, and it certainly is not part of the record, there was no blocking letter that was issued. We were just told verbally. What did you just say? There is nothing in the record that evidences that the regional director actually did anything in writing in blocking this. My recollection is that relevant to what we're deciding today? I believe so. Why? Because, again, with no blocking letter, there's nothing to appeal in any event. Did you make this argument in your brief? No, I did not. Because as the dissent noted, we didn't challenge the blocking policy because we just don't believe it was followed. But I would point out a couple other things I just wanted to raise. The policy as written is fine. We just don't – we never got a determination. But two things about that. One is, once we suspended bargaining, a new charge was filed, and guess what happened? It proceeded to trial very, very quickly within three or four months after that. So there is some action that occurred from that. And the other thing I wanted to just spend the last minute on. What's the consequence of that? I'm sorry. Where does that take us? Where does that take us? It shows that when the board needed to act, it could, and resolve all of these interests, and it didn't until there was some more serious issue on the horizon, and that was the suspension of bargaining. They could have issued a complaint or not, or dismissed those charges months before. You know, the board is operating on a 100-day schedule for trials once they issue a complaint. Well, they're trying to manage their docket, right? Yeah, but that doesn't have nothing to do with reaching a determination on the merits of a case. No, but you said they could decide all these other things. Correct. Okay. What is your other point? The other point I would just raise very quickly is that, and I mentioned this in the brief, but I just wanted to reiterate it, was that the board, on appeal, takes the position that we engaged in piecemeal bargaining, and that just simply didn't occur. That's a term of art that applies only to specific bad faith situations where the employer unilaterally implements a term or condition of employment without bargaining, and that just didn't occur here, and that goes back to Judge Tatel's hypothetical that there were no tactics in this ball that were alleged to be bad faith bargaining, and the way the board characterizes it on appeal is somewhat nefarious. You know, we took this policy, and we disabused the union of the notion, and not surprisingly, they accepted it. Now, when you read the transcript, the union agent himself on the stand said that's bargaining. He didn't characterize it as good or bad or indifferent. All right. Thank you. Thank you very much, Your Honor. We will take the case under advisement.
judges: Rogers, Tatel, Sentelle